IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| LASHANETTE WRIGHT, CHARWIN DIGGS, MICHAEL ROSE, CHARLOTTE ELDRDIDGE, JOHNNY BYRD, VERTINA BLAKELY, MICHAEL PEOPLES, DERRICK WALLEY, TRAVIS MORRIS, JEAN-PAUL WATERFORD, MICHAEL BATES, and BRIAN WATSON, individually and on behalf of all others similarly situated, | § | CIVIL ACTION NO. 1:26-cv-1945-JMR-LF |
| *Plaintiffs,* | § | |
| v. | § | COLLECTIVE ACTION |
| A2K, INC. and ZACHARY WILSON, | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |

**FIRST AMENDED AND COLLECTIVE ACTION COMPLAINT**
**UNDER THE FAIR LABOR STANDARDS ACT**

## I. NATURE OF THE ACTION

1. Plaintiffs LaShanette Wright, Charwin Diggs, Michael Rose, Charlotte Eldridge, Johnny Byrd, Vertina Blakely, Michael Peoples, Derrick Walley, Travis Morris, Jean-Paul Waterford, Michael Bates, and Brian Watson (collectively, "Plaintiffs") bring this civil action against Defendants A2K, Inc. ("A2K") and Zachary Wilson ("Wilson") (collectively, "Defendants") pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") on behalf of themselves and on behalf of all others similarly situated, to recover unpaid back wages, an additional equal amount as liquidated damages, attorneys' fees and costs, and pre- and post-judgment interest.

2. Plaintiffs and all others similarly situated were paid an hourly rate with no additional compensation for overtime on hours worked on the Hermits Peak FEMA PA-TAC project in excess of forty (40) hours in a workweek.

3. Plaintiffs seek certification of this suit as a collective action on behalf of all employees and misclassified independent contractors of Defendants who worked for Defendants on the Hermits Peak FEMA PA-TAC project and were paid on an hourly basis without receiving overtime compensation (collectively referred to as the "Similarly Situated Misclassified Contractors").

## II. PARTIES

4. Plaintiff Lashanette Wright was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

5. Plaintiff Charwin Diggs was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

6. Plaintiff Michael Rose was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

7. Plaintiff Charlotte Eldridge was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

8. Plaintiff Johnny Byrd was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

9. Plaintiff Vertina Blakney was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

10. Plaintiff Michael Peoples was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

11. Plaintiff Derrick Walley was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

12. Plaintiff Travis Morris was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

13. Plaintiff Jean-Paul Waterford was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

14. Plaintiff Michael Bates was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

15. Plaintiff Brian Watson was employed by Defendants on an hourly basis and was not paid premium rate overtime compensation.

16. Defendant A2K, Inc. is a for-profit corporation formed under the laws of Tennessee, with its principal place of business at 101 Gist Street, Franklin, Tennessee 37064. A2K employed Plaintiffs and the Similarly Situated Misclassified Contractors pursuant to the FLSA, NMMWA, and NMHWA.

17. Defendant Zachary Wilson ("Wilson") is a board member of A2K with responsibility for A2K's FEMA Public Assistance operations, including A2K's work on the Hermits Peak FEMA PA-TAC project.

18. Wilson exercised operational control over Plaintiffs and the Similarly Situated Misclassified Contractors. Among other things, Wilson directed their work, served as the main A2K representative who communicated directions from Fluor to them, and supervised and controlled the manner and conditions of their work.

19. Wilson interviewed candidates to work for the company.

20. Upon information and belief, Wilson decided who was hired by the company.

21. Upon information and belief, Wilson decided most of the hourly rates the company would pay Plaintiffs.

22. Wilson told the Plaintiffs what their rates of pay would be.

23. Wilson offered the Plaintiffs their jobs.

24. Wilson was the person who would communicate termination decisions to Plaintiffs at the end of their assignment.

25. Wilson communicated to the Plaintiffs the limitations on their hours each week and holiday schedules.

26. Wilson communicated to the Plaintiffs to be in the office.

27. Wilson would communicate with the Plaintiffs regarding expense reimbursement procedures.

28. Wilson regularly directed that the Plaintiffs be paid for hours over 40.

29. Wilson regularly directed that the Plaintiffs be paid straight time at their hourly rate without any additional compensation based on their hours worked.

30. Wilson acted directly or indirectly in A2K's interest in relation to Plaintiffs and the Similarly Situated Misclassified Contractors. A2K and Wilson jointly employed Plaintiffs and the Similarly Situated Misclassified Contractors, and Wilson was an "employer" within the meaning of 29 U.S.C. § 203(d), NMSA 1978, § 50-4-21(B), and NMSA 1978, § 50-17-2(F).

## III. JURISDICTION AND VENUE

31. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the FLSA.

32. The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

33. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in the District of New Mexico, including Plaintiffs' and the Similarly Situated Misclassified Contractors' work for Defendants in New Mexico.

34. This Court has personal jurisdiction over Wilson because he purposefully directed and controlled Plaintiffs' and the Similarly Situated Misclassified Contractors' work on the Hermits Peak FEMA PA-TAC project in New Mexico, and Plaintiffs' claims arise from that conduct.

## IV. ENTERPRISE FLSA COVERAGE

35. At all relevant times, A2K was engaged in related activities performed through unified operation or common control for a common business purpose; have employees engaged in interstate commerce or in the production of goods or services for interstate commerce, or employees handling, receiving, selling or otherwise working on goods or material that have been moved in or produced for interstate commerce; and have an annual gross volume of sales made or business done of not less than $500,000. A2K, therefore, constitutes an enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce within the meaning of the FLSA (29 U.S.C. § 203(r) & (s)).

36. In addition, in connection with their employment with A2K, Plaintiffs and the Similarly Situated Misclassified Contractors engaged in interstate commerce within the meaning of the FLSA (29 U.S.C. §§ 206(a) & 207(a)(1)).

## V. BACKGROUND AND STATEMENT OF CLAIMS

37. There is a collective of other employees and misclassified independent contractors who performed work similar to Plaintiffs and were subject to the same illegal pay practices.

A. Plaintiffs and the Similarly Situated Misclassified Contractors are misclassified as 1099 independent contractors by Defendants but are employees pursuant to the FLSA.

38. Defendants engaged Plaintiffs and the Similarly Situated Misclassified Contractors as independent contractors.

39. Each of the Plaintiffs in this case were classified as independent contractors by Defendant.

40. Each of the Plaintiffs were paid compensation on an hourly basis for their work.

41. None of the Plaintiffs were paid a predetermined salary amount each week regardless of the number of hours they worked.

42. The rate of pay the Plaintiffs received was based on their hours worked.

43. No additional monies above straight time pay were paid to any Plaintiff if a Plaintiff worked over 40 hours.

44. Defendants hired Plaintiffs and the Similarly Situated Misclassified Contractors and supervised their work.

45. Defendants supervised and directed Plaintiffs and the Similarly Situated Misclassified Contractors work.

46. Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to comply with instruction about when and how their work was to be performed.

47. Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to follow written and unwritten company policies and guidelines.

48. Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to use company-provided templates, checklists, forms, reporting formats, etc.

49. Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to attend mandatory trainings, orientations, and refresher sessions regarding performance of their work.

50. Plaintiffs and the Similarly Situated Misclassified Contractors were required to obtain approval from Defendants to accept, reject, or settle insurance claims.

51. Defendants regularly reversed, modified, or rejected decisions made by Plaintiffs and the Similarly Situated Misclassified Contractors.

52. Plaintiffs and the Similarly Situated Misclassified Contractors were required to seek approval from their supervisor(s) when they were requesting time off or were going to be absent all or part of a workday.

53. The services provided by Plaintiffs and the Similarly Situated Misclassified Contractors were integrated into Defendants' business operations.

54. All services provided for Defendants by Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to be performed by them personally.

55. Plaintiffs and the Similarly Situated Misclassified Contractors did not have the capability or authority to hire, supervise, or pay assistants to help them perform the services they were paid to perform for Defendants.

56. The relationship between Defendants and Plaintiffs (and the Similarly Situated Misclassified Contractors) was a continuing relationship.

57. Defendants set all days and hours of work for Plaintiffs and the Similarly Situated Misclassified Contractors.

58. Plaintiffs and the Similarly Situated Misclassified Contractors were prohibited from setting their own work schedule and were punished for missing work.

59. Plaintiffs and the Similarly Situated Misclassified Contractors were required by Defendants to devote their full time to their positions with Defendants and were prohibited from working for competitors or otherwise.

60. Defendants monitored and evaluated Plaintiffs' and the Similarly Situated Misclassified Contractors' performance for productivity and company compliance.

61. Defendants provided Plaintiffs and the Similarly Situated Misclassified Contractors all materials and equipment to perform their work.

62. Plaintiffs and the Similarly Situated Misclassified Contractors had no opportunity to augment their profit or a loss in the way a business owner would other than their nonguaranteed wages.

63. The work of the Plaintiffs and the Similarly Situated Misclassified contractors required them to be on duty 10 hours a day at specific times 6 days a week.

64. Plaintiffs and the Similarly Situated Misclassified Contractors did not and were not able to make their services available to the general public.

65. Plaintiffs and the Similarly Situated Misclassified Contractors were subject to termination for reasons other than nonperformance of contract specifications, including but not limited to, excessive tardiness and excessive requests for time off.

66. Plaintiffs and the Similarly Situated Misclassified Contractors were able to terminate their relationship with Defendants without incurring liability for failure to complete a job.

67. Plaintiffs and the Similarly Situated Misclassified Contractors were eligible to be named "Employee of the Month" by the Federal Emergency Management Agency ("FEMA").

68. Plaintiffs and the Similarly Situated Misclassified Contractors were, therefore, employees of Defendants, not independent contractors.

B. Plaintiffs and the Similarly Situated Misclassified Contractors were paid on an hourly basis without an overtime premium.

69. Plaintiffs and the Similarly Situated Misclassified Contractors worked on the Hermits Peak FEMA PA-TAC project in New Mexico during their employment.

70. Defendants did not provide Plaintiffs with one (1) hour of sick leave for every thirty (30) hours worked.

71. Defendants did not provide Plaintiffs with any sick leave.

72. Plaintiffs were paid an hourly rate with no overtime compensation on hours worked in excess of forty (40) hours in a workweek.

73. Defendants paid Plaintiffs straight time for all hours worked, even if Plaintiffs and worked over forty (40) hours in a workweek.

74. No employee or misclassified independent contractor of Defendants working on the Hermits Peak FEMA PA-TAC project received overtime compensation.

75. Plaintiffs and the Similarly Situated Misclassified Contractors were not paid on a salary basis.

76. Defendants knew it was required by the FLSA to pay Plaintiffs and the Similarly Situated Misclassified Contractors one and one-half times their regular rate of pay for hours in excess of forty (40) hours in a workweek.

77. Because Wilson directed and controlled Plaintiffs' and the Similarly Situated Misclassified Contractors' work, Wilson knew or should have known that they worked more than forty (40) hours in workweeks without receiving overtime compensation and that they did

not receive required sick leave. Wilson nevertheless suffered or permitted that work and failed to ensure compliance with the FLSA, NMMWA, and NMHWA.

78. Defendants willfully failed to pay Plaintiffs and the Similarly Situated Misclassified Contractors any overtime.

79. Defendants' failure to pay overtime is a violation of the FLSA.

## VI. COLLECTIVE ACTION ALLEGATIONS

80. Plaintiffs hereby adopt and incorporate by reference all of the foregoing paragraphs, allegations, and exhibits as if set forth herein.

81. There is a collective of other employees and misclassified independent contractors who were subject to the same illegal pay practices of not receiving overtime compensation. Plaintiffs seek certification of this suit as a collective action and request that the following collective be conditionally certified:

> **All current and former employees and misclassified independent contractors of Defendants who worked for Defendants on the Hermits Peak FEMA PA-TAC project and were paid on an hourly basis without receiving overtime compensation.**

82. Plaintiffs and the Similarly Situated Misclassified Contractors were paid under an invalid non-guaranteed hourly rate system, without any compensation for overtime worked, thus requiring overtime due at a rate of an additional one and one-half times the regular rate of pay for all hours worked in excess of forty (40) hours in each workweek.

83. Plaintiffs and the Similarly Situated Misclassified Contractors were not guaranteed any specific number of paid days in any workweek and they were not paid on a salary basis.

84. Plaintiffs and the Similarly Situated Misclassified Contractors have consistently worked more than forty (40) hours in most workweeks for the past three (3) years.

85. Plaintiffs and the Similarly Situated Misclassified Contractors are entitled to payment of overtime at the rate of one and one-half times their regular rate of pay for the time period of approximately February 2023 to the present.

86. Defendants have violated 29 U.S.C. § 207 of the FLSA by failing to pay Plaintiffs and the Similarly Situated Misclassified Contractors overtime compensation required by the FLSA in workweeks in which they worked in excess of forty (40) hours.

87. Defendants' violations have been willful.

88. There are questions of law and fact common to the collective.

89. The claims or defenses of the Plaintiffs are typical of the claims or defenses of the collective.

90. Plaintiffs will fairly and adequately protect the interests of the collective.

91. Counsel for Plaintiffs, The Parzivand Law Firm PLLC, is knowledgeable and experienced in the field of employment law (specifically including overtime claims under the FLSA), collective actions and complex litigation, and can and will fairly and competently represent the interests of all collective members.

92. Counsel for Plaintiffs has and will commit the human and financial resources necessary to represent the collective.

93. Plaintiffs' written consents to this action are attached hereto as Exhibit 1. and incorporated by reference.

**CAUSE OF ACTION:**
**UNPAID OVERTIME – FAIR LABOR STANDARDS ACT (FLSA)**
**INDIVIDUAL AND COLLECTIVE ACTION**

94. Plaintiffs hereby adopt and incorporate by reference all of the foregoing paragraphs, allegations, and exhibits as if set forth herein.

95. Plaintiffs regularly worked more than forty (40) hours in a workweek during the relevant period, as did the Similarly Situated Misclassified Contractors, and Defendants knew or should have known of the overtime hours worked.

96. Defendants failed to pay Plaintiffs and the Similarly Situated Misclassified Contractors overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) per workweek, in violation of 29 U.S.C. § 207(a)(1).

97. As a result of Defendants' willful violations under the FLSA, Plaintiffs and the Similarly Situated Misclassified Contractors suffered damages in the form of unpaid overtime wages and are entitled to recover unpaid wages, liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined at trial.

98. Plaintiffs bring this claim on behalf of themselves and all others similarly situated who were subject to the same unlawful pay practices, as Defendants maintained a common policy or practice of failing to pay overtime.

## CAUSE OF ACTION: VIOLATION OF THE NEW MEXICO MINIMUM WAGE ACT

99. Plaintiffs hereby adopt and incorporate by reference all of the foregoing paragraphs, allegations, and exhibits as if set forth herein.

100. At all relevant times, Defendants were "employers" within the meaning of the New Mexico Minimum Wage Act ("NMMWA") in that it employed one or more employees within the state of New Mexico, and Wilson acted directly or indirectly in A2K's interest in relation to Plaintiffs and the Similarly Situated Misclassified Contractors.

101. Defendants violated the NMMWA by failing to pay Plaintiffs and the Similarly Situated Misclassified Contractors overtime compensation at one and one-half times the regular

hourly rate for all hours worked in excess of forty (40) per week, as required by NMSA 1978, § 50-4-22.

102. As a result of Defendants' violations of the NMMWA, Plaintiffs and the Similarly Situated Misclassified Contractors suffered damages in the form of unpaid overtime wages and are entitled to recover unpaid wages, liquidated damages, interest, attorneys' fees, and costs, in an amount to be determined at trial.

**CAUSE OF ACTION:**
**VIOLATION OF THE NEW MEXICO HEALTHY WORKPLACES ACT**

103. Plaintiffs hereby adopt and incorporate by reference all of the foregoing paragraphs, allegations, and exhibits as if set forth herein.

104. At all relevant times, Defendants were "employers" within the meaning of the New Mexico Healthy Workplaces Act ("NMHWA") in that it employed one or more employees within the state of New Mexico, and Wilson acted in A2K's interest in relation to Plaintiffs and the Similarly Situated Misclassified Contractors.

105. Defendants violated the NMHWA by maintaining a policy and practice of not providing sick leave to Plaintiffs and the Similarly Situated Misclassified Contractors, and therefore failing to provide one (1) hour of sick leave per thirty (30) hours worked, as required by NMSA 1978, § 50-17-3(A).

106. The Plaintiffs were deprived of Health & Welfare pay pursuant to federal contracts as a result of their classification as an independent contractor. Damages are due to the Plaintiffs for these violations.

107. The Plaintiffs had to make additional FICA payments as a result of their classification as independent contractors. Damages are due to the Plaintiffs for these violations.

108. Defendants further engaged in willful notice and recordkeeping violations of the NMHWA.

109. As a result of Defendants' violations of the NMHWA, Plaintiffs and the Similarly Situated Misclassified Contractors suffered damages in the form of earned and unpaid sick leave and are entitled to recover the value of the sick leave, other benefits they would have received as employees, liquidated damages, interest, statutory penalties, attorneys' fees, and costs, in an amount to be determined at trial.

## VII. JURY DEMAND

110. Plaintiffs demand a trial by jury and are paying the appropriate jury fee contemporaneously with the filing of this Complaint.

## VIII. PRAYER

Plaintiffs respectfully request that the Court:

1. Upon proper motion, enter an order certifying this suit as a collective action on behalf of all current and former employees and misclassified independent contractors of Defendants who worked for Defendants on the Hermits Peak FEMA PA-TAC project and were paid on an hourly basis without receiving overtime compensation, and that notice therefore be distributed to all putative collective members;

2. Declare that A2K and Wilson jointly employed Plaintiffs and the Similarly Situated Misclassified Contractors and that each was an "employer" under the FLSA, NMMWA, and NMHWA;

3. Declare that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, by failing to pay overtime compensation to Plaintiffs and the Similarly Situated Misclassified Contractors for hours worked in excess of forty (40) per workweek;

4. Declare that Defendants violated the NMMWA, NMSA 1978, § 50-4-22, by failing to pay overtime compensation to Plaintiffs and the Similarly Situated Misclassified Contractors for hours worked in excess of forty (40) per workweek;

5. Award Plaintiffs and the Similarly Situated Misclassified Contractors unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally, pursuant to 29 U.S.C. § 216(b) and NMSA 1978, § 50-4-26;

6. Award Plaintiffs and the Similarly Situated Misclassified Contractors earned and unpaid sick leave, lost benefits as a result of not being classified as employees and statutory penalties in an amount to be determined at trial against Defendants, jointly and severally, pursuant to NMSA 1978, § 50-17-11(A);

7. Award Plaintiffs and the Similarly Situated Misclassified Contractors an additional equal amount, or an additional double amount, as liquidated damages against Defendants, jointly and severally, pursuant to 29 U.S.C. § 216(b) or NMSA 1978, § 50-4-26, respectively, whichever is greater;

8. Award Plaintiffs and the Similarly Situated Misclassified Contractors reasonable attorneys' fees, expert witness fees, and costs of suit as provided by 29 U.S.C. § 216(b), NMSA 1978, § 50-4-26;

9. Award Plaintiffs and the Similarly Situated Misclassified Contractors pre-judgment and post-judgment interest as permitted by law; and

10. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Hessam Parzivand*
Hessam Parzivand
New Mexico ID No. 25-497
Texas Bar No. 24071157
Federal ID No. 1129776
Email: hp@parzfirm.com
T: (713) 533-8171

Travis Bryan
New Mexico ID No. 26-229
Texas Bar No. 24102826
Federal ID No. 3020169
Email: travis@parzfirm.com
T: (832) 233-7527

THE PARZIVAND LAW FIRM, PLLC
10701 Corporate Dr., Suite 185
Sugar Land, Texas 77477
F: (713) 533-8193

COUNSEL FOR PLAINTIFFS AND
ALL OTHERS SIMILARLY SITUATED

**CERTIFICATE OF SERVICE**

I hereby certify that on July23, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Hessam Parzivand*
Hessam Parzivand